JANA SUE BALFANY, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF WILLIAM E. BALFANY,
DECEASED, APPELLANT, V. DON BALFANY AND BETTY BALFANY,
HUSBAND AND WIFE, APPELLEES.

476 N.W.2d 681

Filed November 1, 1991.    No. 89-840.

G. Kirk Meade, of Nichols, Douglas, Kelly and Arfmann, P.C., for appellant.

James L. Haszard, of McHenry & Flowers, and Bevin B. Bump for appellees.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Jana Sue Balfany commenced an action against Don and

Betty Balfany to impose a constructive trust on life insurance proceeds. The district court for Dawes County sustained the defendants' demurrers to Jana Balfany's second amended petition and dismissed the action when Jana Balfany elected to stand on her pleading. See *Bert Cattle Co. v. Warren*, 238 Neb. 638, 471 N.W.2d 764 (1991) (dismissal of an action after a demurrer has been sustained to a petition without repleading is a final order).

## STANDARD OF REVIEW

In reviewing an order sustaining a demurrer, an appellate court accepts the truth of facts well pled and the factual and legal inferences which may reasonably be deduced from such facts, but does not accept conclusions of the pleader. *Weiner v. Hazer*, 230 Neb. 53, 430 N.W.2d 269 (1988).

> "When ruling on a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial."

*Security Inv. Co. v. State*, 231 Neb. 536, 538, 437 N.W.2d 439, 442 (1989).

"As used in § 25-806(6) concerning a demurrer, a statement of 'facts sufficient to constitute a cause of action' means 'a narrative of the events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff.' " *Schuyler State Bank v. Cech*, 228 Neb. 588, 593, 423 N.W.2d 464, 468 (1988).

## JANA BALFANY'S SECOND AMENDED PETITION

Jana and William E. Balfany were married on June 6, 1985, and thereafter resided in Chadron, Nebraska. On July 9, 1985, William Balfany signed a form to designate Jana Balfany as the beneficiary of a $40,000 policy on William's life, a policy issued by American General Life Insurance Company before William's marriage to Jana Balfany.

In 1987, Jana Balfany commenced a marital dissolution action in the district court for Dawes County, which on October

6, 1987, entered an order prohibiting the parties from "in any manner concealing, encumbering, hypothecating, conveying or disposing of any of the property of the marriage except in the ordinary course of business" until further court order. Additionally, on October 13, 1987, the court prohibited the parties from "disposing of, concealing, encumbering, hypothecating or conveying any property of the parties, all until further Order of this Court."

On October 27, 1987, William Balfany signed a change of beneficiary form for the American policy and designated his father, Don Balfany, as the primary beneficiary and his mother, Betty Balfany, as the contingent beneficiary under the policy and, on October 30, purchased an additional life insurance policy from Massachusetts Indemnity and Life Insurance Company in the amount of $100,000, in which Don Balfany was the named beneficiary. William Balfany canceled the American policy on January 10, 1988, and was killed in an automobile accident on January 23, 1988. Proceeds of the Massachusetts policy were paid to Don Balfany.

In her second amended petition, Jana Balfany alleged that "proceeds" of the American policy, the first policy on William Balfany's life, were marital property and, therefore, she had a property interest in the proceeds, which were subject to the restraining orders of October 6 and October 13, 1987. However, Jana Balfany did not allege that she has a property interest in the Massachusetts policy, which was William's second life insurance policy, or an interest in the proceeds from that policy. For that matter, connection between the American and Massachusetts policies is neither asserted nor disclosed.

Jana Balfany further alleged that William Balfany's removing her as beneficiary under the American policy and subsequently canceling the American policy constituted a violation of the restraining orders and were fraudulent and unconscionable conduct which prevented Jana from receiving the insurance proceeds of the Massachusetts policy, the second policy of insurance on William's life. Jana Balfany claimed that as a result of William's actions regarding the insurance policies, Don and Betty Balfany have been unjustly enriched by receipt of proceeds from the Massachusetts policy; hence, a

constructive trust should be imposed on these proceeds, with Don and Betty Balfany as trustees and Jana Balfany as beneficiary.

## NATURE OF A CONSTRUCTIVE TRUST

"A constructive trust is imposed when one has acquired legal title to property under such circumstances that he or she may not in good conscience retain the beneficial interest in the property. In such a situation, equity converts the legal titleholder into a trustee holding the title for the benefit of those entitled to the ownership thereof." *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 825, 458 N.W.2d 443, 450 (1990). Accord *Ford v. Jordan*, 220 Neb. 492, 370 N.W.2d 714 (1985).

"A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his acquisition or retention of the property would constitute unjust enrichment." *Knoell v. Huff*, 224 Neb. 90, 97-98, 395 N.W.2d 749, 755 (1986).

Generally, a court, sitting in equity, will not impose a constructive trust and constitute an individual as a trustee of the legal title for property, unless it be shown, by clear and convincing evidence, that the individual, as a potential constructive trustee, had obtained title to property by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that, under the circumstances, such individual should not, according to the rules of equity and good conscience, hold and enjoy the property so obtained.

*In re Estate of Lienemann*, 222 Neb. 169, 177, 382 N.W.2d 595, 601 (1986).

As a fraud-rectifying remedy, a constructive trust, even in the absence of the trustee's participation in fraud, is available on the basis of the principle that one who accepts a product of fraud, knowing the means by which the fraud-caused product was achieved, is liable to the defrauded party, although the recipient of the product did not personally participate in the fraud.

*Gottsch v. Bank of Stapleton, supra* at 826, 458 N.W.2d at 451.

## DISCUSSION

The sole question is whether Jana Balfany alleged sufficient facts to state a cause of action for imposition of a constructive trust.

At the outset, we note that the restraining orders, or temporary injunctions, in the dissolution proceedings did not prohibit acquisition of property, but only prohibited activity which affected, or might affect, a spouse's property interest in existing marital property or other property of the parties, including concealment of property.

We conclude that Jana Balfany's second amended petition failed to state facts sufficient for a cause of action because the petition failed to allege (1) that marital assets were used to acquire or maintain William's second policy of insurance, the Massachusetts policy; (2) a factual basis to support allegations of William's fraudulent conduct necessary for a constructive trust under the circumstances; and (3) a factual basis that the defendants were unjustly enriched by the insurance proceeds.

First, the petition in question fails to allege that marital assets were used to acquire or maintain the Massachusetts policy. While the petition alleges that the "proceeds" of the American policy were marital property and, therefore, subject to the restraining orders, Jana Balfany made no similar allegation concerning the Massachusetts policy. The American policy was canceled before William Balfany's death, and, accordingly, no proceeds were paid or payable under the American policy. Therefore, there is neither a policy nor proceeds in which Jana Balfany has an interest to support her claim for a constructive trust regarding the American policy.

Additionally, there is no allegation that Jana Balfany has an interest in either the Massachusetts policy or its proceeds. Significantly, the petition does not allege that marital assets were used to acquire or maintain the Massachusetts policy as property derived from marital assets which were subject to the restraining orders. While proceeds from the cash surrender value, if any, received after cancellation of the American policy might have been marital property, the petition does not allege

that proceeds from surrender of the American policy were involved in acquisition of the Massachusetts policy.

In *Mullikin v. Pedersen*, 161 Neb. 22, 71 N.W.2d 485 (1955), the bankruptcy trustee of a partnership sought to impose a constructive trust on life insurance proceeds payable to Maysel Pedersen, widow of Hilbert F. Pedersen, who, during his lifetime, had been a partner in a retail furniture business. The bankruptcy trustee claimed that Hilbert wrongfully used partnership funds to purchase the insurance policy. At the close of all the evidence the district court sustained Maysel Pedersen's motion for directed verdict and entered judgment for her. This court stated that the bankruptcy trustee had the burden to establish that Hilbert "improperly appropriated assets of the partnership to the payment of the cost of the insurance or of a part of it," *id*. at 32, 71 N.W.2d at 491, and held that the bankruptcy trustee failed to present any evidence that Hilbert used partnership assets to purchase the life insurance policy in question.

Consequently, Jana Balfany's second amended petition failed to allege that William Balfany misappropriated marital assets to acquire or maintain the Massachusetts policy and, in the absence of such an allegation concerning marital assets, the petition failed to state that Jana Balfany has a property interest in the proceeds paid to Don Balfany pursuant to the Massachusetts policy.

Second, Jana Balfany relied on William Balfany's violation of the restraining orders, i.e., William's removing Jana as beneficiary of the American policy and subsequently canceling that policy, to support her allegation of William's fraudulent conduct. " 'Fraud is generally a question of fact, and to be effective as a cause of action or a defense must be pleaded by suitable allegations of fact from which it may be concluded. * * * The mere charge of fraud is a conclusion and presents no issue.' " *Preferred Pictures Corp. v. Thompson*, 170 Neb. 694, 700, 104 N.W.2d 57, 61 (1960). See, also, *Nelson v. Cool*, 230 Neb. 859, 434 N.W.2d 32 (1989).

In a marital dissolution proceeding, a temporary restraining order prohibiting transactions involving marital assets or property in which either spouse has an interest maintains the

status quo between the parties pending a final resolution of property questions and disposition of respective property interests. See, *Wilharms v. Wilharms*, 93 Wis. 2d 671, 287 N.W.2d 779 (1980); *Prince v. Bryant*, 87 Wis. 2d 662, 275 N.W.2d 676 (1979).

In *Wilharms v. Wilharms, supra*, the Wisconsin Supreme Court rejected a contention similar to Jana Balfany's contention in the present case. In *Wilharms*, Barbara and Dennis Wilharms were married in April 1968. Barbara commenced a dissolution of marriage action on October 3, 1975, and on October 8 the court issued a temporary restraining order prohibiting either party from disposing of assets except in the usual and ordinary course of business. At issuance of the restraining order, Dennis owned three life insurance policies which designated Barbara as the primary beneficiary and Dennis' children as contingent beneficiaries. On October 28, 1975, Dennis executed a change of beneficiary form and named William and Eva Wilharms, his parents, as the beneficiaries. Dennis died on December 18, 1975.

The Wisconsin court stated in *Wilharms*:

As a beneficiary of her husband's life insurance policy, Barbara Wilharms had a property interest in the policy. [Citations omitted.] The change of beneficiary designation disposed of his wife's interest in the policy, and therefore violated the order. But this act is not sufficiently unconscionable or wrongful, to warrant the imposition of a constructive trust on the proceeds of the policies. The temporary order made no mention of life insurance. It is possible that Dennis Wilharms believed that he was acting properly. Even so, if it can be shown that he changed beneficiaries in the policies in order to defraud, or otherwise unconscionably deprive his wife of the policy proceeds, then his actions may warrant the imposition of a constructive trust if the other elements for its imposition have been met. In making this determination, the court should also consider the potentially wrongful conduct of third parties. . . .

Wrongful conduct, however, is not sufficient standing alone. Barbara Wilharms must also demonstrate that the

property sought to be imposed with a constructive trust equitably belongs to her.

93 Wis. 2d at 679-80, 287 N.W.2d at 784.

We agree with the rationale and principle expressed in *Wilharms* that a violation of a restraining order, standing alone, is insufficient for imposition of a constructive trust on property which is subject to the restraining order. William Balfany may have believed that his actions, changing the beneficiary on the American policy and subsequently canceling that policy, were proper and that these actions were not prohibited by the restraining orders. "The rule is well settled in this state that before a person may be said to be in contempt of court for failure to comply with a restraining order, the evidence must disclose not only the failure to comply with the order but also that the failure was willful." *Malec v. Malec*, 196 Neb. 533, 537, 244 N.W.2d 82, 85-86 (1976). Jana Balfany did not allege William Balfany willfully violated the restraining orders when he changed the beneficiary on the American policy and subsequently canceled that policy. Therefore, Jana Balfany failed to allege facts supporting the allegation that William Balfany acted with fraudulent intent in canceling the American policy.

Similarly, Jana Balfany's petition failed to allege that William Balfany's changing beneficiaries on the American policy and canceling that policy, or his acquisition of the Massachusetts policy, was done with the intent to conceal information from Jana Balfany regarding property which was subject to the restraining orders. In *Christopher v. Evans*, 219 Neb. 51, 55, 361 N.W.2d 193, 196 (1985), we stated:

> *Conceal* means "To hide, secrete, or withhold from the knowledge of others. To withdraw from observation; to withhold from utterance or declaration; to cover or keep from sight. To hide or withdraw from observation, cover or keep from sight, or prevent discovery of." Black's Law Dictionary 261 (5th ed. 1979).

Accord *Kracl v. Loseke*, 236 Neb. 290, 461 N.W.2d 67 (1990). There is no allegation that William Balfany willfully or intentionally concealed from Jana Balfany the acquisition of the Massachusetts policy. The second amended petition failed

to allege any facts to support an allegation of fraudulent concealment.

Finally, Jana Balfany alleged that Don and Betty Balfany have been unjustly enriched by receipt of the proceeds from the Massachusetts policy. We note that Betty Balfany was not a beneficiary under the Massachusetts policy and, therefore, would, at most, have a contingent interest in proceeds payable to Don Balfany pursuant to the Massachusetts policy. Additionally, there is no allegation of a factual basis to support the assertion of an unjust enrichment to Don Balfany. Also, Jana Balfany did not allege that Don assisted or participated in William Balfany's actions regarding the policies, or even knew that William Balfany had canceled the American policy and had purchased the Massachusetts policy which named Don as beneficiary.

Even if Jana Balfany had alleged that Don knew about the changes to William's life insurance, that knowledge would, standing alone, be insufficient to impose a constructive trust. As we stated in *In re Estate of Lienemann*, 222 Neb. 169, 178, 382 N.W.2d 595, 602 (1986):

> [M]ere receipt of a benefit by a confidant, as the result of a transaction in which the confidant has participated on behalf of or in concert with the entrusting individual, does not, itself, furnish a basis for imposition of a constructive trust on property acquired by or benefiting the confidant as a consequence of the transaction.

## CONCLUSION

The district court properly sustained the demurrers of Don and Betty Balfany and, when Jana Balfany elected not to plead further, correctly dismissed Jana Balfany's action.

AFFIRMED.

WHITE, J., participating on briefs.