**In re the Marriage of Kirk Quirino SMITH, Petitioner, Appellant,**

v.

**Patricia Louise SMITH, Respondent.**

No. C9–93–1065.

Court of Appeals of Minnesota.

Nov. 16, 1993.

Kurt Robinson, Blaine, for appellant.

Patricia Louise Smith, pro se.

Considered and decided by KLAPHAKE, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Kirk Smith seeks review of an order denying his motion to modify a 1992 Texas divorce decree awarding physical custody of the parties' two children to respondent Patricia Smith. The district court denied the motion on the alternative grounds that appellant had not presented a prima facie case for modification and that Minnesota lacked child custody jurisdiction. We agree with appellant that the district court had jurisdiction to modify the Texas decree, but we affirm the denial of the modification motion on the merits.

## FACTS

The parties were married in Texas in 1984. They have two daughters, now ages eight and seven. Appellant lived separately from respondent and the children for varying periods during the marriage due to marital discord and appellant's military service.

The parties separated permanently in July 1991, and the children remained with respondent. The parties' June 19, 1992 Texas divorce decree incorporated their stipulation awarding physical custody of the children to respondent.

On June 18, 1992, respondent moved to Arizona without the children. The parties informally agreed that the children would live with appellant for one year, while re-spondent found employment and established a home for the children in Arizona.

Appellant and the children moved to Minnesota in October 1992. On February 19, 1993, appellant filed a custody modification motion in Minnesota. Appellant claimed the children have been integrated into his family and that respondent has not achieved stability. In his affidavit, appellant stated the children have a close relationship with his fiancee and her extended family in Minnesota, and that they have made friends in their neighborhood and school. He also stated that the children prefer to live with him.

In his affidavit, appellant stated that respondent yelled at the children as a method of disciplining them. Appellant claimed that respondent was emotionally distant from the children, as evidenced by an incident where a cuckoo clock fell and injured one of the children, but respondent checked on the clock before attending to the child. Appellant also stated that respondent told the children that as a result of the divorce, appellant was "lost forever" from their lives.

Appellant also alleged that respondent's adult brothers, who live with her mother in Arizona, are underachievers and "horrible role models" for the children. Appellant stated that respondent's family believes in tarot cards and uses rune stones and other devices to determine the course of their lives.

On April 29, 1993, the district court issued an order summarily denying appellant's motion. This appeal followed.

## ISSUES

I. Did the district court err in determining Minnesota lacks jurisdiction to modify the Texas custody decree?

II. Did the district court err in denying the modification motion without an evidentiary hearing?

## ANALYSIS

### I.

■ This court has de novo review of the district court's legal conclusion that Minnesota lacks jurisdiction to modify the Texas cus-

tody decree. *See Mahoney v. Mahoney,* 433 N.W.2d 115, 117 (Minn.App.1988) (in determining whether jurisdiction exists, this court is not bound by the ultimate legal conclusions of the trial court), *pet. for rev. denied* (Minn. Feb. 10, 1989).

Minnesota has codified the Uniform Child Custody Jurisdiction Act (UCCJA). *See* Minn.Stat. §§ 518A.01–.25 (1992). The UCCJA prohibits a Minnesota court from modifying the custody decree of another state unless:

> (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 518A.01 to 518A.25 or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction.

Minn.Stat. § 518A.14, subd. 1.

Minn.Stat. § 518A.03, subd. 1 sets out the circumstances under which Minnesota courts have jurisdiction over a child custody matter:

> (a) this state (1) is the home state of the child at the time of the commencement of the proceeding, or (2) had been the child's home state within six months before commencement of the proceeding and the child is absent from the state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in the state; or
>
> (b) it is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
>
> (c) the child is physically present in this state and (1) the child has been abandoned or (2) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

> (d) (1) it appears that no other court in another state would have jurisdiction under prerequisites substantially in accordance with clauses (a), (b), or (c), or a court of another state has declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child, and (2) it is in the best interest of the child that a court of this state assume jurisdiction.

There is a fifth basis for jurisdiction under the Federal Parental Kidnapping Prevention Act of 1980, 28 U.S.C.A. § 1738A (West Supp.1993) (PKPA). The PKPA allows a court to assert jurisdiction if it has "continuing jurisdiction," as established by section 1738A(d). A state court that has made a prior child custody determination has continuing jurisdiction to modify custody if the court continues to have jurisdiction under the laws of the state, and the state is the residence of the child or of any contestant. 28 U.S.C.A. § 1738A(c)(2)(E) & (D).

■ Although Texas issued a custody decree in June 1992, Texas can no longer exercise jurisdiction under either the UCCJA or the PKPA because neither the parties nor the children still live there. Texas was the children's "home state" within six months before appellant filed his modification motion, but section 518A.03, subdivision 1(a)(2) does not apply because neither of the parties continue to live in Texas. Texas could not assert "best interest" jurisdiction under the UCCJA because neither the children nor the parties still have a significant connection with the state and substantial evidence concerning the children's present or future care is not available there. *See id.,* subd. 1(b). The "emergency" and "default" bases for jurisdiction under the UCCJA also do not apply to Texas. *See id.,* subd. 1(c), (d).

Similarly, Texas cannot assert continuing jurisdiction under the PKPA because Texas is no longer the residence of the children or of any contestant. *See* 28 U.S.C.A. § 1738A(d).

Because Texas can no longer assert jurisdiction, Minnesota has jurisdiction to modify the Texas decree if there is a basis for Minnesota's exercise of jurisdiction under the UCCJA. Minnesota is not the children's

"home state" because the children had only lived here for approximately four months before appellant filed his modification motion. *See* Minn.Stat. § 518A.02(e) ("home state" means the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months). "Home state" jurisdiction is not available in any other state.

Factors bearing on whether Minnesota may assert "best interest" jurisdiction under section 518A.03, subdivision 1(b) include

> such considerations as whether the child and at least one parent reside or have resided in the state recently, whether the child and parent have or have recently had significant connections with the state so that the state's courts have readily available substantial evidence relative to the child's care, protection, training, family relationship and familial support. Maximum state contacts, rather than minimum, are required to support "best interest" jurisdiction.

*Schmidt v. Schmidt*, 436 N.W.2d 99, 104 (Minn.1989) (citations omitted).

In this case, appellant and the children were settled in Minnesota and had developed significant connections with the state when appellant brought his motion. Appellant works here and his affidavit states that the children attend school and church here and have developed friendships. Substantial evidence was available in Minnesota concerning the children's future care, protection, and training, and their personal relationships with appellant, appellant's fiancee, and the fiancee's extended family.

Under similar facts, this court held that the district court erred in finding that Minnesota did not have jurisdiction to hear appellant's motion for a change of custody. *See Beier v. Beier*, 371 N.W.2d 52 (Minn.App. 1985). In *Beier*, the mother was awarded custody in a Texas decree, but the father moved to Minnesota and the mother moved to Illinois. *Id.* at 54. This court concluded that Texas lost jurisdiction. *Id.* at 55. This

court found that Minnesota could exercise "best interest" jurisdiction, because the child did not have a "home state,"[1] and the child had sufficient contacts with this state. *Id.* at 56. Consistent with *Beier*, we hold that "best interest" jurisdiction in Minnesota was available in this case.

If a court determines it does have jurisdiction under the UCCJA, "its inquiry next focuses on whether another custody proceeding is pending in a court of another state which likewise has jurisdiction." *Schmidt*, 436 N.W.2d at 104. Finally, "if dual jurisdiction exists, the inconvenient forum issue must be addressed." *Id.* Even if Arizona could assert jurisdiction, no custody proceeding was pending there. Moreover, at the time appellant filed the custody modification motion, the children's connections to Minnesota were much stronger than their connections to Arizona, because the children already were established here and they had not been to Arizona since 1986. We conclude the district court erred in denying appellant's modification motion on the ground that it lacked child custody jurisdiction.

## II.

■ The party seeking modification of a custody order must submit affidavits setting forth the facts which demonstrate the conditions justifying a modification under Minn. Stat. § 518.18. *See* Minn.Stat. § 518.185 (1992). The district court then reviews the moving party's affidavits, taking the alleged facts to be true, and determines whether a prima facie case has been made. *Nice–Petersen v. Nice–Petersen*, 310 N.W.2d 471, 472 (Minn.1981). If the moving party has not made a prima facie case, the district court should deny the motion for an evidentiary hearing. *Id.*

■ If the district court determines that the moving party's affidavit fails to establish a prima facie case, the district court need not make specific findings on the statutory factors for modification. *Abbott v. Abbott*, 481 N.W.2d 864, 868 (Minn.App.1992). The stan-

---

1. Under the PKPA, "best interest" jurisdiction applies only if no other state has "home state" jurisdiction over a child. 28 U.S.C.A. § 1738A(c)(2)(B)(i). But there is no "home state" preference under the UCCJA. *See Biscoe v. Biscoe*, 443 N.W.2d 221, 225 (Minn.App.1989).

dard of review is whether the district court abused its discretion in denying the motion to schedule an evidentiary hearing. *Id.*

■ Generally, no motion to modify a custody order may be made earlier than one year after the entry of the decree. Minn. Stat. § 518.18(a) (1992). This time limit does not prohibit a modification motion if the court

· finds that there is persistent and willful denial or interference with visitation, or has reason to believe that the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development.

Minn.Stat. § 518.18(c) (1992). The "present environment" in which endangerment must be found is the "judicially-approved" environment. *Bjerke v. Wilcox,* 401 N.W.2d 97, 100 (Minn.App.1987).

■ Appellant filed his modification motion on February 19, 1993, and it was served personally on April 1, 1993, less than one year after entry of the original custody decree. Therefore, for the district court to even entertain the motion, the accompanying affidavit must allege facts showing that respondent persistently denied visitation or that the children are endangered by placement with respondent. *Ross v. Ross,* 477 N.W.2d 753, 755 (Minn.App.1991). In *Ross,* this court noted that the legislature "likely intended to demand a showing of a significant degree of danger." *Id.* at 756.

■ Appellant's affidavit does not allege facts showing that the children may be significantly endangered in respondent's custody. Allegations of abuse, physical or emotional, have been held to endanger a child's well being. *Lilleboe v. Lilleboe,* 453 N.W.2d 721, 724 (Minn.App.1990). Except for the cuckoo clock incident, appellant does not allege that respondent or any member of her extended family ever harmed or neglected the children. Even if appellant accurately stated that respondent first examined the cuckoo clock rather than the child, appellant does not claim that respondent failed to attend to the child's injury. This single incident, if true, does not constitute reason to believe the children may be significantly en-

dangered. Nor do appellant's allegations that respondent's brothers are underachievers and that the family uses tarot cards and other prophetic instruments support a finding of endangerment.

Appellant states that respondent has not achieved stability and the children have been unable to reach her since she moved in January 1993. However, the affidavit does not show that respondent is not seeking to establish a permanent home or that she would have been unable to do so by the end of June 1993, when the children were scheduled to return to her.

■ Appellant also claims that both children want to live with him, although he concedes the older child misses respondent and is having difficulty with the separation. The choice of "an older teenage child" is an overwhelming factor for the court to consider in determining endangerment. *Ross,* 477 N.W.2d at 756. However, the children here were only eight and seven years old at the time of the hearing on the motion. These children may not even be of sufficient age to express a preference. *See* Minn.Stat. § 518.-17, subd. 1(2) (1992); *Sucher v. Sucher,* 416 N.W.2d 182, 184 (Minn.App.1987) (trial court erred in considering seven-year-old child's preference where child did not exhibit significant maturity), *pet. for rev. denied* (Minn. Mar. 18, 1988). Appellant does not claim that the children are opposed to living with respondent, and their alleged preference to live with him does not support a finding that they may be endangered in respondent's custody.

Finally, respondent's alleged statement to the children that appellant will be lost forever from their lives and her "threat" to retain them after Christmas visitation do not constitute a "persistent and willful" denial of visitation. A custodial parent's efforts to undermine the children's relationship with the non-custodial parent may endanger the children, but appellant's report of respondent's alleged statements is too vague to support a finding of endangerment in this case. *See Lutzi v. Lutzi,* 485 N.W.2d 311, 316 (Minn.App.1992) (statements in affidavit regarding neglect of children lack specificity and substance and do

not compel a finding that children's best interests are threatened).

## DECISION

Because Texas, the decree state, cannot exercise continuing jurisdiction, the children do not have a "home state," and appellant and the children have significant connections with Minnesota, the district court erred as a matter of law in concluding that it lacked jurisdiction under the UCCJA to modify child custody. The district court properly denied the modification motion without an evidentiary hearing on the alternate ground that appellant failed to present a prima facie showing of persistent interference with visitation or possible endangerment to allow a motion for modification within one year of the decree.

**Affirmed in part and reversed in part.**